IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

WENDY L. B.,

                        Plaintiff,

            v.                                    Civil Action No.
                                                  5:22-CV-0708 (DNH/DEP)

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

                        Defendant.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF

PIERRE PIERRE LAW, P.C.              EDDY PIERRE PIERRE, ESQ.
211 East 43rd Street, Suite 608
New York, NY 10017

FOR DEFENDANT

SOCIAL SECURITY ADMIN.              GEOFFREY PETERS, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


<u>REPORT AND RECOMMENDATION</u>

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §

405(g), to challenge a determination of the Commissioner of Social

Security ("Commissioner") finding that she was not disabled at the relevant

times and, accordingly, is ineligible for the disability insurance benefits

("DIB") for which she has applied.  The matter has been referred to me for

the issuance of a report and recommendation, pursuant to 28 U.S.C. §

636(b) and Northern District of New York Local Rule 72.3.  For the reasons

set forth below, I recommend a finding that the Commissioner's

determination resulted from the application of proper legal principles and is

supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in March of 1962, and is currently sixty-one years of

age.  She was fifty-seven years old on December 25, 2019, the date upon

which she alleges she became disabled, and fifty-eight years old as of

March 31, 2020, the date she was last insured for benefits under Title II

("DLI").  Plaintiff measures five feet and six inches in height, and weighed

approximately two hundred and seventeen pounds during the relevant

period.  Plaintiff resides in a house with her husband in Elbridge, New York.

Plaintiff reports that she has a high school education, along with

some further training in business.  She has worked in the relevant past in

various positions, including as a cashier, a waitress, a deli worker, a bus

monitor, a medical transportation driver, and a front desk/laundry worker at a hotel.

Plaintiff alleges that she suffers from chronic pain in her lower back, vertigo, anxiety, and depression.  As is relevant to her application for benefits, she treated for her impairments throughout the relevant period with Auburn Community Hospital, Heritage One Day Surgery Center, New York Spine and Wellness Center, and Dr. Cassandra Archer at Auburn Internal Medicine and Pediatrics.

At the administrative hearing related to her application for benefits, plaintiff reported that, because of her pain, she is unable to lift anything over ten pounds, can sit for only an hour at one time, and can hardly walk from the door of her house to the mailbox because her legs feel "like jelly." Plaintiff testified that she also has balance issues and does not shower alone because of fear of falling.  She goes shopping only if other people are with her to do the lifting and reaching, does not lift laundry when cleaning clothes, does not vacuum, cleans the dishes for only ten minutes at a time because it is difficult to stand, and uses a stool when she cooks. Plaintiff further reported that she has two or three "bad days" per week when she experiences depression, anxiety, and panic attacks.

II.    <u>PROCEDURAL HISTORY</u>

3

A.   <u>Proceedings Before the Agency</u>

Plaintiff applied for DIB payments under Title II of the Social Security

Act on May 5, 2020, alleging disability due to a lumbar spine disorder,

degenerative disc disease, chronic pain, asthma, chronic obstructive

pulmonary disease ("COPD"), obesity, vertigo, depression, and anxiety.

Administrative Law Judge ("ALJ") Robyn L. Hoffman held an administrative

hearing to address plaintiff's application for benefits on May 20, 2021,

following which she issued a decision on September 29, 2021, finding that

plaintiff was not disabled.  That opinion became a final determination of the

agency on May 17, 2022, when the Social Security Appeals Council

("Appeals Council") denied plaintiff's request for review of the decision.

B.   <u>The ALJ's Decision</u>

In her decision, ALJ Hoffman applied the familiar, five-step sequential

test for determining disability.  At step one, she found that plaintiff did not

engage in substantial gainful activity during the brief relevant period, which

spans between her alleged onset date of December 25, 2019, and her DLI

of March 31, 2020.  ALJ Hoffman next found at step two that plaintiff

suffers from a severe impairment that imposes more than minimal

limitations on her ability to perform basic work functions, namely, a lumbar

spine impairment.  As part of her step two finding, ALJ Hoffman also found

that plaintiff's alleged obesity, asthma, COPD, gastroesophageal reflux

disorder ("GERD") or gastritis, depression, and anxiety do not constitute

severe impairments, and that her alleged vertigo does not constitute a

medically determinable impairment.

At step three, ALJ Hoffman examined the governing regulations of

the Commissioner setting forth presumptively disabling conditions (the

"Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that

plaintiff's conditions do not meet or medically equal any of the listed

conditions set forth in those regulations, specifically considering Listing

1.15.

ALJ Hoffman next surveyed the available record evidence and

determined that plaintiff retains the residual functional capacity ("RFC") to

perform a range of work at the light exertional level, as defined by the

controlling regulations, with the following exceptions:

> the claimant can occasionally lift and carry twenty
> pounds; frequently lift and carry ten pounds; sit for six
> hours; and stand or walk for six hours, all in an eight-
> hour workday with normal breaks. She should avoid
> working at unprotected heights, climbing ladders,
> ropes, or scaffolds, and working in close proximity to
> dangerous machinery or moving mechanical parts of
> equipment, and driving a motor vehicle. She can
> frequently climb ramps or stairs. Can frequently
> balance, stoop, and crouch. The claimant should
> avoid exposure to excessive amounts of respiratory
> irritants such as dust, odors, fumes, and gases and

extreme hot and cold temperatures.

ALJ Hoffman went on to step four and, after consulting with a vocational expert, concluded that plaintiff remains able to perform her past relevant work as a cashier, Dictionary of Occupational Titles ("DOT") code 211.462-010, which is classified at the light level with a specific vocational preparation ("SVP") level of two, and hotel clerk, DOT code 238.367-038, which is classified at the light level with an SVP of four. Specifically, the ALJ found that plaintiff can perform these occupations both as she actually performed them and as those jobs are generally performed in the national economy. Based upon these findings, ALJ Hoffman determined that plaintiff was not disabled at the relevant times.

C.   This Action

Plaintiff commenced this action on July 1, 2022.[1]  In support of her challenge to the ALJ's determination, plaintiff argues that the ALJ erred (1) when assessing her RFC, specifically by failing to identify what evidence in the record supports that finding, and failing to properly assess the opinion from treating physician Dr. Archer in accordance with the applicable

---

[1]   This action is timely, and the Commissioner does not argue otherwise. It has been treated in accordance with the procedures set forth in the recently enacted Supplemental Social Security Rules and General Order No. 18. Under those provisions, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

regulations, (2) by failing to properly assess plaintiff's subjective reports of symptoms according to the regulations, and (3) by relying on vocational expert testimony to support the finding at step four because such testimony was based on an incomplete hypothetical question that does not incorporate all of the limitations supported by the record.  Dkt. No. 10.

Oral argument was conducted in this matter, by telephone, on May 2, 2023, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.    Disability Determination: The Five-Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether

9

the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, at step five the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46.  In deciding whether

that burden has been met, the ALJ should consider the claimant's RFC,
age, education, past work experience, and transferability of skills.  *Ferraris*,
728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.    <u>Analysis</u>

        1.    <u>The ALJ's Assessment of Plaintiff's RFC</u>

Plaintiff first argues that the ALJ erred in assessing her RFC by failing
to identify what specific evidence supports the RFC finding and to properly
evaluate the opinion from treating physician Dr. Cassandra Archer
according to the applicable regulations.  Dkt. No. 10, at 16-22.

Because plaintiff's application was filed after March 27, 2017, this
case is subject to the amended regulations regarding opinion evidence.
Under those regulations, the Commissioner "will not defer or give any
specific evidentiary weight, including controlling weight, to any medical
opinion(s), . . . including those from your medical sources," but rather will
consider whether those opinions are persuasive by primarily considering
whether the opinions are supported by and consistent with the record in the
case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL
168819, at *5853 (stating that, in enacting the new regulations, the agency
was explicitly "not retaining the treating source rule").  An ALJ must
articulate in his or her determination as to how persuasive he or she finds

all of the medical opinions and explain how he or she considered the

supportability[2] and consistency[3] of those opinions.  20 C.F.R. §

416.920c(b).  The ALJ also may – but is not required to – explain how he or

she considered the other relevant enumerated factors related to the

source's relationship with the claimant, including the length of any

treatment relationship, the frequency of examinations by the source and the

purpose and extent of the treatment relationship, whether the source had

an examining relationship with the claimant, whether the source specializes

in an area of care, and any other factors that are relevant to the

persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

On October 14, 2019, Dr. Archer completed a medical source

statement form in which she noted that she had been treating plaintiff every

four-to-six months since April of 2010, that plaintiff has diagnoses of benign

paroxysmal positional vertigo ("BPPV"), anxiety, and chronic low back pain,

---

[2]    On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1).

[3]    On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

and that plaintiff's symptoms associated with those conditions include

intermittent vertigo, panic attacks, and back pain.  Administrative Transcript

("AT") at 820.[4]  Dr. Archer opined that plaintiff can sit for two-to-four hours

and stand or walk for two hours in an eight-hour workday, but needs to

alternate positions between sitting and standing every twenty minutes to

relieve pain.  AT 820.  She opined that plaintiff can occasionally lift and

carry less than ten pounds, rarely lift and carry ten pounds, and never lift

and carry any greater weight.  *Id.*  Dr. Archer further opined that plaintiff

can push and pull rarely with her upper extremities and never with her

lower extremities, can rarely reach but frequently handle, finger and feel,

frequently has pain severe enough to interfere with her focus and

concentration, must avoid noise, requires unscheduled breaks and reclining

breaks hourly for fifteen minutes at a time, and would likely be absent from

work four days or more per month.  AT 820-21.  Dr. Archer stated that

plaintiff takes gabapentin, tramadol, and hydroxyzine, "all of which are

sedating."  AT 821.  In response to a request to describe the objective

findings, clinical observations and symptomology supporting her opinion,

Dr. Archer wrote that "[p]atient describes frequent episodes of vertigo,

---

[4]      The administrative transcript is found at Dkt. No. 9, and will be referred to
throughout this decision as "AT __."

contributing to fall risk.  She has anxiety and depression, describes panic in social settings.  She has chronic back pain which radiates to her legs."  *Id.*

In a letter dated April 1, 2020, Dr. Archer wrote that plaintiff is believed to have BPPV, but has had limited success with vestibular rehabilitation and continues to experience episodes of vertigo on a daily basis.  AT 739.  Because of those episodes, according to Dr. Archer, she has not been able to drive and has been limited "in regards to position changes and standing for long periods of time."  *Id.*  As to her spinal impairment, Dr. Archer noted that plaintiff suffered a fall in November of 2018 that caused a compression fracture of her L3 vertebra in addition to her existing degeneration particularly at the L5-S1 level, which causes chronic back pain, for which she has received multiple injections and requires extended-release tramadol on a daily basis.  *Id.*  Dr. Archer indicated that "[t]his medication may contribute to sedation, confusion, and difficulty with operating heavy machinery, driving, etc."  *Id.*

The ALJ found Dr. Archer's 2019 opinion to be only somewhat persuasive.  AT 21.  The ALJ acknowledged that Dr. Archer has treated plaintiff since 2010, but found that there are inconsistencies between the "extreme" limitations in her opinion and the content of the treatment records, discussing a few illustrative treatment notes from both Dr. Archer

14

and providers at New York Spine and Wellness, which are dated July 2019, August 2019, December 2019, and January 2020. *Id.* The ALJ further stated that the opined limitations are more extreme than is suggested by plaintiff's reported activities of daily living; that Dr. Archer failed to provide any explanation for limitations related to reaching in particular; that any opinions regarding plaintiff's ability to work are reserved to the Commissioner; and that the opinion regarding off-task behavior and absences is both speculative and unsupported by the record. *Id.* As to the 2020 letter, the ALJ stated that she adopted the opined limitation regarding avoidance of driving, operating heavy machinery and working at heights despite the lack of a clear etiology for plaintiff's reported vertigo, but rejected the opinion that plaintiff cannot stand for "a long time" as vague and inconsistent with the record as discussed related to the more specific limitations outlined in the 2019 opinion. AT 21-22.

Plaintiff argues that the ALJ erred in evaluating Dr. Archer's opinion by (1) finding the opinion "somewhat persuasive" but not specifically stating which parts of the opinion she accepted and which she rejected, when in fact she seems to have rejected the totality of the opinion, and (2) interpreting raw medical data in relying on both normal findings and her own interpretation of the magnetic resonance imaging ("MRI") testing to

support her rejection of the opinion.  Dkt. No. 10, at 20-21.

Although plaintiff is correct that the ALJ seems to have declined to account for any of the limitations outlined in Dr. Archer's opinion despite nominally finding it "somewhat persuasive," she has not identified any way in which such alleged error was harmful.[5]  The ALJ provided reasons grounded in the factors of both supportability and consistency to buttress her finding that the limitations contained within the 2019 opinion and the 2020 letter are not an accurate representation of plaintiff's functioning during the three-month relevant period.  Plaintiff does not raise any challenge suggesting that the ALJ failed to comply with the regulations as to her actual analysis of the required factors, and such argument would not be persuasive.

As to plaintiff's contention that the ALJ improperly relied on her own interpretation of raw medical data in a way that amounts to a substitution of her own opinion for that of a physician, that is simply not the case. Although the ALJ recites the findings from plaintiff's late-2019 MRI and x-

_____

[5]    Alternatively, the ALJ's statement that Dr. Archer's opinion is somewhat persuasive could also reasonably be read to encompass both the 2019 opinion and the 2020 letter, given that the ALJ did not provide a separate persuasiveness determination for the letter and did indeed adopt certain limitations from that letter.  AT 21-22.  The relevant regulation permits an ALJ to consider multiple opinions from a medical source within a single analysis, and explicitly states that the agency is not required to articulate how it considered each medical opinion from one source individually.  20 C.F.R. § 404.1520c(b)(1).

ray of her lumbar spine, nowhere in the decision does she specifically interpret those findings as suggesting any specific functional restrictions, nor does she cite the objective imaging as a basis for her rejection of Dr. Archer's opinion, as plaintiff appears to suggest. Similarly, although the ALJ discusses the medical evidence, including various normal findings, she does not state that these findings alone translate to the limitations in the RFC; rather, in mentioning some of the findings when assessing Dr. Archer's opinion, she has merely concluded that the evidence does not support the level of restriction found in that specific opinion. Further, plaintiff's argument that the ALJ relied on her own interpretation of the evidence is squarely contradicted by the fact that she explicitly found to be persuasive, and essentially adopted, the limitations outlined in the state agency medical consultant's prior administrative medical findings, as will be discussed in greater detail below.

I note that the ALJ does not specifically address Dr. Archer's statement in the 2020 letter regarding being limited related to "position changes," but recommend that any such oversight represents harmless error. As the ALJ explained related to the standing limitation in the same letter, the limitation regarding positional changes is also vague and "not well defined." AT 21-22. Indeed, it is not clear whether plaintiff's being

limited with regard to "positional changes" means she requires positional changes, or whether she is not able to perform positional changes to some extent.  To the extent Dr. Archer indicates that limitation is related to plaintiff's reported vertigo, the ALJ found vertigo to not be established as a medically determinable impairment and therefore was not required to account for any suggested limitations related to that impairment.  Lastly, the ALJ rejected, along with the rest of the limitations in Dr. Archer's 2019 opinion, the portion of that opinion that indicated plaintiff requires the ability to change positions between sitting and standing every twenty minutes.  AT 21, 820.  Specifically, although the ALJ does not explicitly mention the position change limitation in the 2019 opinion, she broadly finds, after a discussion of the evidence that contradicts that opinion, that "[t]he limitations provided by Dr. Archer are more extreme than suggested by the overall record and reported activities of daily living."  AT 21.  As will be discussed further below, the ALJ's reliance on the opinion of Dr. Perikarrupan – who did not opine a need for position changes – and her finding that plaintiff's reports, including for a need to change positions fairly frequently, are not wholly consistent with the evidence in the record provide substantial support for her rejection of any position change limitation as opined by Dr. Archer.

As to plaintiff's argument that the ALJ failed to identify which evidence supports her RFC finding, that argument is squarely contradicted by the ALJ's decision when read as a whole.  The ALJ engaged in a fairly comprehensive recitation of the medical evidence covering the short period at issue in this case, generally noting that, although the evidence shows some positive findings and substantiates that plaintiff experiences pain related to her lower back, treatment with injections, lumbar facet rhizotomy procedures, and extended-release tramadol have all helped to relieve that pain somewhat.  AT 19-20.  The ALJ further highlighted that plaintiff underwent lumbar facet medial branch radiofrequency ablation procedures in February and March of 2020, after both of which she reported fifty-percent pain relief on an ongoing basis throughout the rest of the treatment records in 2020.  AT 20.  Regarding the specific limitations in the RFC, the ALJ found the prior administrative medical finding of state agency medical consultant Dr. A. Periakaruppan to be generally persuasive because it is supported by explanation and citations to the record, based on a review of the available evidence and that source's expertise in disability adjudications, and is generally consistent with the overall record.  AT 22.  Plaintiff notably did not present any challenge to the ALJ's assessment of Dr. Periakaruppan's opinion in her briefing, and I therefore find the

19

objections to the reliance on that opinion advanced for the first time during oral argument were untimely raised and therefore should be deemed to have been waived.  I note further that, even if those arguments were not waived, they are unpersuasive, as it appears Dr. Periakarrupan had the opportunity to review nearly all of the relevant evidence related to the brief time period at issue when formulating his opinion, and I see no evidence in the record that would merit second-guessing the ALJ's finding that such opinion was consistent with the evidence.  Indeed, it is the function of this court to review for whether the ALJ has committed a legal error or has failed to support his or her findings with substantial evidence, not to reweigh the evidence.  *See Noah D. v. Comm'r of Soc. Sec.*, 21-CV-0110, 2022 WL 4536238, at *6 (N.D.N.Y. Sept. 28, 2022) (Dancks, M.J.) (noting that, although plaintiff pointed to evidence which he believed demonstrated more serious limitations, "it is not the proper role of this Court to reweigh evidence"); *Dale A. M. v. Comm'r of Soc. Sec.*, 19-CV-1150, 2021 WL 1175160, at *22 (N.D.N.Y. Mar. 29, 2021) (Scullin, J.) (highlighting that the issue on appeal is not whether there is some or even substantial evidence to support the plaintiff's argument, but rather whether substantial evidence supports the ALJ's decision).  The ALJ's discussion of the evidence and reliance on Dr. Periakaruppan's opinion are sufficient to show what

evidence the ALJ relied upon when formulating the RFC finding.

For all of the above reasons, I recommend a finding that the ALJ's assessment of the opinion evidence, and of the evidence in general, is consistent with the applicable regulations and supported by substantial evidence.

### 2.    The ALJ's Assessment of Plaintiff's Subjective Reports

Plaintiff next argues that the ALJ failed to properly assess her subjective symptom reports.  Dkt. No. 10, at 22-25.  Specifically, plaintiff argues that the ALJ (1) unduly relied on the objective findings and did not properly credit the consistent objective and clinical findings supporting her pain such as tenderness, antalgic gait and restricted range of motion, and (2) discussed her reported activities of daily living but did not provide any specific analysis of how those activities are inconsistent with her other subjective reports, and did not acknowledge the difficulties plaintiff reported in performing those activities.  *Id.*

Under the two-step review protocol applicable in social security cases for assessing a claimant's subjective reports of symptoms, an ALJ must first determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, and, if so, the ALJ must then evaluate the intensity and

persistence of those symptoms and determine the extent to which those symptoms limit the claimant's ability to perform work-related activities. Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3-8. When addressing this second prong, an ALJ must consider the objective medical evidence and other evidence in the record, including statements by the claimant and reports from both medical and non-medical sources, and must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms, considering relevant factors which include evidence regarding (1) daily activities, (2) the location, duration, frequency, and intensity of pain or other symptoms, (3) factors that precipitate or aggravate the claimant's symptoms, (4) the type, dosage, effectiveness, and side effects of medication, (5) any treatment other than medication that is used to relieve the symptoms, (6) other measures to obtain relief of symptoms, and (7) any other relevant factors. *Id.*

If the ALJ finds that a claimant's subjective testimony should be rejected, he or she must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate and whether the determination is supported by substantial evidence. *Martone v. Apfel*, 70 F. Supp. 2d 154, 151 (N.D.N.Y. 1999) (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608

(S.D.N.Y. 1987)).  The ALJ's decision need not contain a discussion of all of the potentially relevant factors listed above, provided that it is clear from the decision that the ALJ considered all of the evidence and that he or she provided specific reasons for his or her determination as to the intensity, persistence, and limiting effect of the claimant's symptoms.  *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (finding that failure to discuss certain factors did not require remand because the ALJ provided specific reasons for his determination "and the record evidence permits us to glean the rationale of the ALJ's decision").  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).  "The ALJ's assessment of an individual's 'subjective complaints' regarding her pain and other symptoms is entitled to substantial deference by a reviewing court."  *See Madelyn S. v. Comm'r of Soc. Sec.*, 20-CV-1478, 2022 WL 526233, at *7 (N.D.N.Y. Jan. 27, 2022) (Baxter, M.J.).

In her decision, the ALJ noted that plaintiff reported back pain that limited her ability to sit or stand for long periods or to lift more than ten pounds and caused her to use a cane and a walker, and that she experiences vertigo once per day.  AT 19.  The ALJ found that, although

plaintiff's medically determinable impairments could be reasonably expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the medical and other evidence.  *Id.*  The ALJ discussed the medical evidence, which showed that while plaintiff did have some positive symptoms related to her lumbar spine, such as tenderness, restricted and painful range of motion, and some other signs, she generally had normal strength and sensation in her legs.  AT 19-20.  The ALJ further acknowledged the efficacy of plaintiff's various treatments, noting that a previous lumbar nerve block had provided fifty-percent relief of her pain for one week, previous lumbar rhizotomy procedures, lumbar steroid injections and extended-relief tramadol daily provided transient relief of her pain, and, most significantly, bilateral lumbar radiofrequency ablation procedures performed in February and March of 2020 provided ongoing fifty-percent relief of her pain through the rest of the documented treatment notes.  *Id.* The ALJ also noted that plaintiff reported a robust range of daily activities such as cooking, preparing meals, doing crafts, washing dishes, sweeping, performing light cleaning, caring for her dog, shopping, using social media, and talking on the phone.  AT 20.

As can be seen, contrary to plaintiff's argument, the ALJ did not rely

solely on the objective evidence when rendering her finding on plaintiff's subjective reports.  Nor, in assessing that objective evidence, did the ALJ ignore the various positive findings in the treatment record or find that plaintiff experienced no pain or limitations.  Instead, the ALJ assessed that the treatments plaintiff received, particularly the radiofrequency ablations combined with tramadol, were effective at decreasing, if not wholly eliminating her pain.  Treatment records from after the radiofrequency ablation show that plaintiff reported four-out-of-ten pain in mid-April 2020, which represents a documented improvement.  *Compare* AT 751 *with* 802.  Further, in August of 2020, which is admittedly months after the date plaintiff was last insured, plaintiff reported that the ablation therapy had helped her increase her activity and functionality.  AT 812.  A claimant need not be wholly asymptomatic or pain-free in order to be found not disabled.  *See Bush v. Colvin*, 14-CV-0601, 2015 WL 4078204, at *9 (N.D.N.Y. July 6, 2015) (Suddaby, J.) (rejecting plaintiff's assertions regarding the ALJ's credibility assessment, noting, "[t]he ALJ did not look to the medical evidence as proof positive Plaintiff was completely without symptoms or completely pain free, instead the ALJ reasoned the relief Plaintiff received from his injections, medication, surgery, and a spinal cord stimulator allowed him to perform sedentary work").  Treatment, and the efficacy

thereof, is one of the relevant factors the ALJ should consider when assessing a claimant's subjective reports, as was discussed above, and the ALJ properly considered that here.

As to the ALJ's citation to the reported daily activities, plaintiff is correct that the ALJ did not include some of the qualifications plaintiff reported regarding those activities, such as that she sits when she cooks or goes shopping with others because she cannot lift.  AT 20, 44.  The ALJ did, however, acknowledge that plaintiff reported she could stand to do dishes for only ten minutes at a time.  AT 19.  Overall, I do not find the ALJ's discussion of plaintiff's daily activities to be unduly deceptive regarding plaintiff's reported functionality, and, even if it is somewhat lacking, the ALJ has provided other valid and supported reasons to explain her finding regarding the subjective reports.  Further, contrary to plaintiff's argument, the ALJ did not appear to rely on plaintiff's daily activities as proof she could perform work at the level of the RFC, but rather seemingly as evidence that is inconsistent with plaintiff's other reports of disabling limitations.

For all of the above reasons, I find no reason not to honor the deference owing to an ALJ's assessment of a claimant's subjective reports of symptomology, and therefore recommend that the ALJ's assessment of

plaintiff's subjective reports be found to be consistent with the applicable legal standards and supported by substantial evidence.

      3.    Plaintiff's Step Four Argument

As to plaintiff's last argument, it is premised on the assumption that the ALJ has failed to include relevant limitations from Dr. Archer's opinion in particular in the hypothetical question presented to the vocational expert. Dkt. No. 10, at 25-26.  Because I recommend a finding that the ALJ did not err in her assessment of either Dr. Archer's opinion or the RFC finding in general, I recommend that this argument likewise be rejected.

IV.    SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED, defendant's motion for judgment on the pleadings (Dkt. No. 15) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 10) be DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days

within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT

TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE

APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.

1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:     May 5, 2023
           Syracuse, NY          _____
                                 DAVID E. PEEBLES
                                 U.S. Magistrate Judge